# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:10-CV-175-RLV-DCK

| | |
|---|---|
| KEVIN GERARD HERNDON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on *pro se* Plaintiff's "Motion For Summary Judgment" (Document No. 8) and Defendant's "Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that Defendant's "Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Kevin Gerard Herndon ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 2). On February 19, 1985, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq.*, alleging an inability to work due to a disabling condition beginning August 14, 1984. (Transcript of the Record of Proceedings ("Tr.") 17). The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially in March 1985, which was not appealed further at that time. Plaintiff later filed applications for disability insurance benefits and supplemental security income in November 2002, alleging disability since November 12, 2002. (Tr. 17). These applications were approved by an Administrative Law Judge ("ALJ") on March 8, 2004. (Tr. 17). Plaintiff is currently receiving disability benefits as a result of that ruling. (Tr. 17).

It was later determined that Plaintiff is a member of the Hyatt III class. (Tr. 17-18; Document 8-1, p.3-4). In Hyatt III, social security disability claimants filed a class action lawsuit seeking to compel the Secretary of Health and Human Services to cease the practice of ignoring a claimant's testimony regarding the degree of pain in the absence of objective clinical findings substantiating the alleged pain. Hyatt v. Barnhart, 315 F.3d 239, 242 (4th Cir. 2002). After a series of rulings in the case, the Social Security Administration promulgated Ruling 90-1p in order to comply with the first Hyatt decision. Id. The Fourth Circuit Court of Appeals later determined that Ruling 90-1p, issued on August 6, 1990, was consistent with its precedent. Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1992) (*per curiam*). Hyatt III and Hunter effectively ended the class action dispute. Hyatt, 315 F.3d at 242. Thereafter, the Social Security office notified claimants whose prior claims were adjudicated under the Secretary's prior policy of nonacquiescence that their prior claims were available for reconsideration. Id.

Plaintiff filed a claim for reconsideration based on Hyatt III, which was re-adjudicated and denied on October 10, 2008. (Tr. 18; 35). Thereafter, Plaintiff filed a timely written request for a hearing on November 10, 2008. (Tr. 18). Since Plaintiff has been determined disabled for the period from 2002 through the present, the period at issue here is from August 14, 1984 to November 12, 2002. (Tr. 18).

On May 18, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Richard H. Harper ("ALJ"). (Tr. 18, 290-307). On June 2, 2009, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 14-16). Plaintiff filed a request for review of the ALJ's decision on July 29, 2009, which was denied by the Appeals Council on September 7, 2010. (Tr. 7-9). The June 2, 2009 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. Id.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on November 12, 2010. (Document No. 2). Plaintiff's "Motion For Summary Judgment" (Document No. 8) and "Supporting Memorandum Of Law" (Document No. 8), were filed May 19, 2011; and Defendant's "Motion For Summary Judgment" (Document No. 12) and "Memorandum Of Law In Motion For Summary Judgment" (Document No. 13) were filed August 22, 2011. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). "Substantial

evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between August 4, 1984 and November 12, 2002. (Tr.18). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from August 14, 1984, through November 12, 2002. (Tr. 24).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 24).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity for 12 months beginning on August 14, 1984, his alleged disability onset date, but that he did perform substantial gainful activity from either 1988 or 1990 to November 12, 2002. (Tr. 20).[1] At the second step, the ALJ found that Plaintiff's cervical neuropraxia was a severe impairment. (Tr.

---

[1] It is unclear which year the ALJ determined that Plaintiff began substantial gainful activity. He states in the heading at step one that Plaintiff performed substantial gainful activity from 1990 until 2002, but later concludes that the Plaintiff did not meet "his burden of establishing that he did not engage in substantial gainful activity from 1988 until the end of the period in question." (Tr. 20).

20).[2]  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 21).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform a full range sedentary work, meaning:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.

(Tr. 21).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's testimony concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.  (Tr. 22).

At the fourth step, the ALJ found that Plaintiff had no past relevant work.  (Tr. 23).  At the fifth and final step, the ALJ concluded that "considering the claimant's age, education, work experience, and residual functional capacity," jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 24).  Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 14, 1984 to November 12, 2002.  (Tr. 24).

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

Plaintiff on appeal to this Court raises the following issues: (1) whether substantial evidence supports the ALJ's decision that Plaintiff was not disabled; and (2) whether Plaintiff is entitled to relief with respect to his allegations under the Civil Rights Act. (Document No. 13). The undersigned will discuss each of these contentions in turn.

**A. Whether Substantial Evidence Supports The ALJ's Decision**

In his first assignment of error, Plaintiff argues that the ALJ's decision could not have been supported by substantial evidence because Plaintiff's old claim file was not included in the documents the ALJ considered in making its decision. (Document No. 8, pp.4-5). However, the undersigned finds that the record contained sufficient evidence from the relevant time period to support the ALJ's finding that Plaintiff was not "disabled" from 1984 to 2002.

Plaintiff relies on a "spoliation of evidence" theory to assert that the ALJ's determination was improperly made without the original claim file. Plaintiff originally filed for DIB in 1985 and was denied benefits. From that point, Plaintiff states that he has been unable to locate his original claim file despite repeated requests to the Social Security Office in Hickory, North Carolina. Plaintiff asserts that the ALJ "knew the records and file were missing . . . but knowingly held hearing despite of the entire record was missing . . . ." (Document No. 8, p.4).

In his determination, the ALJ acknowledged that the original claim file was not included in the new claim documents. (Tr. 23). Plaintiff, however, admits that with the exception of records from Dr. Benny Goodman, all medical records are present because he re-submitted them when he filed for benefits again in 2002. (Document No. 8, p.7). The ALJ's decision in the present case was based in part on these medical records, which he used to evaluate the Plaintiff's claim under the five-step sequential evaluation process. The undersigned finds that the availability of the majority of

Plaintiff's medical treatment files, combined with all other evidence, gave the ALJ a sufficient basis to make his determination.

First, the ALJ found that Plaintiff had not engaged in any substantial gainful activity for 12 months beginning on August 14, 1984, his alleged disability onset date, but that he did perform substantial gainful activity from 1988 or 1990 to November 12, 2002. (Tr. 20). Moreover, it appears that Plaintiff engaged in at least part-time work from 1984 through 1990, when he joined the United States Army. Id. Generally, a finding at step one that a claimant engaged in substantial gainful activity during the period in question necessitates a finding of no disability. See 20 C.F.R. 404.1520(4). Because there was some question of Plaintiff's ability to work between 1984 and 1988, the ALJ determined that "the disability issue should be resolved using the sequential evaluation process." (Tr. 20).

At step two, the ALJ determined that Plaintiff had a severe impairment of cervical neuropraxia. The ALJ based this conclusion on the medical evidence provided in Plaintiff's file, including evaluations by a series of treating physicians whose diagnoses were in the original claim file that Plaintiff complains the ALJ did not consider. (Tr. 21). The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 21).

At step four, the ALJ must determine whether a claimant has the residual functional capacity to perform his past relevant work. In this case, the ALJ concluded that Plaintiff did not have past relevant work, but that he did have the residual functional capacity to perform a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Tr. 21, 23). In reaching this finding, the ALJ considered Plaintiff's testimony, treatment notes, and reports from State agency

medical consultants. (Tr. 21-23). Even without the original claim file, the evidence considered at step four is sufficient to support the ALJ's finding that Plaintiff could perform a full range of sedentary work.

In particular, the evidence showed that Plaintiff suffered a football injury in 1984 and was evaluated by several physicians. (Tr. 21, 130-31). Dr. Larry Boyles diagnosed probable neuropraxia of C5 and C6 cervical route without route avulsion, but noted that Plaintiff was in excellent physical health otherwise. (Tr. 21, 131). Dr. Boyles also found that Plaintiff still had a strong grip and strong muscles of the forearm, the ability to elevate the shoulder, the ability to stand on heels and toes without difficulty, and normal range of motion at the hips. (Tr. 21, 131). Imaging of the cervical spine revealed no abnormalities. (Tr. 129). Later that year, Plaintiff was seen by Dr. Michael D. Kaufman, who also diagnosed Plaintiff with a severe stretch injury and partial evulsion of the C5 and C6 nerve roots. Dr. Kaufman was not sure that Plaintiff would be able to play football again and prescribed physical therapy. (Tr. 21; Document No.11-2, pp.3-5). One month later in October 1984, Plaintiff was treated by a chiropractor, Dr. Carl Starnes, who noted that Plaintiff made some progress and his strength increased from his last visit with decreased pain. (Tr. 21; Document No. 11-2, p.6). In December 1984, Plaintiff saw an orthopedic surgeon, Dr. Timothy Taft, who advised Plaintiff that his muscle weakness and atrophy had been caused by a peripheral nerve injury, that he did not need additional tests, that it would heal on its own, and that there was no treatment other than maintaining a full passive range of motion. (Tr. 23; Document No. 11-2, pp.1-2).

The Plaintiff was treated in 1999 for carpal tunnel syndrome after a work injury unrelated to the 1984 football injury. The orthopedic treatment records show that his symptoms responded to treatment within a few months. (Tr. 23, 132-145).

The ALJ also considered Plaintiff's own testimony. Plaintiff testified that he was unable to raise his right arm after the football injury, but was able to write on a desk top and to continue his education. (Tr. 23, 300-01). In addition, and perhaps most significantly, Plaintiff testified that he enlisted in the Army, passed the entrance physical exam, completed basic and advanced training, and remained in military service for four years, all during the period at issue. (Tr. 23; 299-304). Finally, the ALJ considered the State agency assessment completed for Plaintiff's 2002 application. In that report, state medical consultants concluded that claimant had regained the residual functional capacity for medium work, with which the ALJ agreed. (Tr. 23, 240). Reviewing the ALJ's analysis of this and other evidence, it is clear that substantial evidence supported his finding that Plaintiff had engaged in substantial gainful activity during much of the relevant time period and was capable of at least a full range of sedentary work during the period from 1984 to 2002.

At step five the ALJ determined that considering Plaintiff's age, education, and work experience, Medical-Vocational Rule 201.27 directed a finding of "not disabled." (Tr. 24). As the Fourth Circuit has noted, the ALJ may make the step five determination either by use of grids or by vocational expert testimony. See Grant v. Schweiker, 669 F.2d 189, 192 (4th Cir. 1983). Where the claimant suffers only exertional limitations, the ALJ is free to rely completely on the grids provided in the Medical-Vocational Rules. Id. In the present case, the ALJ found that Plaintiff's only limitations were exertional and that he could perform a full range of sedentary work. Thus, the ALJ correctly determined that Plaintiff was not "disabled" as defined in the Regulations during the period in question.

Based on the ALJ's evaluation using the five-step process and consideration of a full range of medical evidence, the Court is satisfied that the ALJ's determination was supported by substantial evidence.

**B. Whether Plaintiff Is Entitled To Relief With Respect to his Allegations Under the Civil Rights Act**

Plaintiff also alleges that Defendant violated the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, by conspiring to violate his civil rights due to class-based and racial hostility. (Document No. 8, p.1). It appears that Plaintiff bases this argument on his belief that the Social Security Administration deliberately destroyed his old claim file or refused to conduct a search for the file upon his request. (Document No. 8, pp.3-4). In his "Supporting Memorandum of Law," Plaintiff argues that "[t]he policies, procedures and law pertaining class action lawsuits to locate files prior to a hearing never occurred." (Document No. 8, p.6). As discussed in detail above, the undersigned believes that the ALJ's determination in Plaintiff's case is supported by the evidence, notwithstanding the absence of Plaintiff's old claim file. In any case, Plaintiff's request for relief based on either section of the Civil Rights Act must be denied.

First, Plaintiff alleges the denial of his civil rights under section 1983 of the Civil Rights Act, which establishes a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" for any person acting under the color of state law. 42 U.S.C. § 1983. Second, Plaintiff alleges that Defendant violated his civil rights under section 1985(3), which prohibits any two or more people from conspiring to deprive another of equal protection of the laws of the United States. 42 U.S.C. § 1985(3). As to the section 1983 claim, Plaintiff asserts that the Defendant was acting under the color of state law and conspired to violate his civil rights due to

11

class-based and racial hostility. However, Defendant's review of Plaintiff's disability is an operation of federal law and does not involve any actions under the color of state law; thus, this claim must fail.[3]

Even if Defendant was acting under the color of state law, Plaintiff's claim would also fail due to the sovereign immunity doctrine, which applies equally to section 1983 and 1985(3) claims. It is axiomatic that the United States cannot be sued without its consent and that a federal court lacks subject matter jurisdiction over such claims absent an express waiver of sovereign immunity. United States v. Mitchell, 463 U.S. 206, 212 (1983). In addition, a suit filed against a federal officer in his or her official capacity is actually a suit against the United States. See Hawaii v. Gordon, 373 U.S. 57, 58 (1963). Here, Plaintiff claims that Defendant acted within his official capacity to conspire to violate Plaintiff's civil rights. Because Plaintiff sued the Commissioner of Social Security acting in his official capacity, the case must actually be considered a suit against the United States and sovereign immunity applies.

Due to sovereign immunity, the United States must have explicitly waived its protection in order for Plaintiff's claim to succeed. Mitchell, 463 U.S. at 212. Plaintiff has not articulated a specific waiver of sovereign immunity, nor has the United States consented to suit under the Civil Rights statutes. See Hines v. Irvington Counseling Ctr., 933 F. Supp. 382 (D.N.J. 1996) (finding a lack of subject matter jurisdiction to hear civil rights claims against the Social Security Administration

---

[3] Given that Plaintiff files this motion as a *pro se* litigant, the Court might construe Plaintiff's claim liberally as an attempt to state a cause of action under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (permitting suits against federal officers for monetary damages alleged to have violated a citizen's constitutional rights). However, the Supreme Court, in Schweiker v. Chilicky, 487 U.S. 412 (1988), has definitively disallowed Bivens actions in the Social Security context, stating, "The [Social Security] Act, however, makes no provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits." 487 U.S. at 424.

and its employees in their official capacities, given absence of express waiver of the United States' sovereign immunity); Biase v. Kaplan, 852 F.Supp. 268, 280 (D.N.J. 1994) ("It has, in fact, been consistently held that neither section 1985 nor any other provision of the Civil Rights Act may provide the basis for an action against the United States or a Federal agency"); Proffitt v. United States, 758 F.Supp. 342, 345 (E.D.Va. 1990) ("[T]he United States is not a person within the meaning of § 1985 . . . [n]or can plaintiff recover . . . against the individual defendants sued in their official capacity"). Given that suit against the Defendant under the Civil Rights Act is barred, Plaintiff's second request for relief under both sections must be denied.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed. In addition, Plaintiff's claims under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985 cannot be sustained.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 8) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 12) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to *pro se* Plaintiff by certified mail and the Honorable Richard L. Voorhees.

**IT IS SO RECOMMENDED**.

Signed: September 14, 2011

David C. Keesler
United States Magistrate Judge